IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRYL K. JOYCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CV-355-WKW |
| | ) | [WO] |
| SEWON C&A INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Sewon, C&A, Inc.'s (Sewon) motion for summary judgment. (Doc. # 23.)   Plaintiff Terryl K. Joyce (Joyce) brings two race-discrimination claims under 42 U.S.C. § 1981.   Specifically, Joyce alleges that Sewon discriminated against him when it failed to promote him, an English-speaking, Black man, and instead hired a Korean-speaking, ethnically Korean man for a salaried position that required Korean-language fluency.   Joyce also alleges that Sewon then terminated him because he complained about not being promoted because of his race.   Sewon argues that summary judgment is appropriate for both claims because (1) Joyce did not attempt to inquire about or apply for the job he sought, and because (2) Joyce's complaint did not constitute statutorily protected conduct nor was it a but-for cause of his termination.   Sewon is correct on all accounts.   The court will therefore grant Sewon's motion.

## I.   JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).   The parties do not contest personal jurisdiction or venue.

## II.   STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.   *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.   *Id.*   Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.   Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials . . . .   [A] party who does not have the trial burden of production may rely on a showing that a

party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.   BACKGROUND

Sewon, C&A, Inc. is a small, Alabama-based subsidiary of a Korean company. (Doc. # 25-4 at 3–4.) Sewon's eleven-person team assembles and supplies manuals, warranties, and other printed documentation to Korean-based car manufacturers like Hyundai and Kia. (Doc. # 25-4 at 3.) Sewon primarily communicates with its customers in Korean, and exclusively communicates with its parent company in Korean. (Doc. # 25-4 at 4.) Because of these constant business communications with Korean language entities, every management position at Sewon requires Korean language proficiency. (Doc. # 25-4 at 4.) Sewon's managers primarily communicate amongst each other in Korean. (Doc. # 25-4 at 4). Despite Korean being the primary language at Sewon, some of Sewon's managers are bilingual with both Korean and English language proficiency.

3

But not all Sewon's employees can speak Korean. Some of the non-managerial employees, like the warehouse employees, can only speak English. One such English-speaking employee was Plaintiff Terryl Joyce.

Joyce, a Black man, began working for Sewon in the spring of 2017. (Doc. # 17 at 2.)   Joyce was an hourly warehouse employee.   He was not in a managerial role and therefore did not have to communicate with Sewon's customers or parent-company in Korean.   Instead, Joyce's primary responsibilities at Sewon were that of a warehouse worker:   He loaded and unloaded cargo, compiled documents, and cleaned the company property.   (Doc. # 25-4 at 4; Doc. # 17 at 2.)   But, according to Sewon, Joyce had a history of tardiness, absenteeism, and there were "numerous occasions" throughout his employment where Joyce was not where he was supposed to be. (Doc. # 25-2 at 16.) Sewon apparently disciplined Joyce many times throughout his tenure as a warehouse worker (Doc. # 25-2 at 16), but there is no written record because Sewon did not keep a written disciplinary history on its employees.   (Doc. # 25-4 at 4.)

Joyce had worked at Sewon for just over two years when Sewon posted an advertisement for a salaried position in Sewon's managerial office department. (Doc. # 25-4 at 5.)   The position's advertisement was published in one place:   the Georgia Tech Korean Student Association (GTSKA) website.   (Doc. # 25-4 at 5.) The ad was written entirely in Korean and explicitly stated that English language

proficiency was one of the position's requirements. (Doc. # 25-4 at 5, 25–26.) Sewon did not give the ad, or any other notice of the job opening, to Sewon's warehouse employees, including Joyce.   And Joyce never inquired about the advertised position or applied for it.[1]   (Doc. # 25-1 at 9.)   Indeed, Joyce was not aware of the job "in general" until it was filled.   (Doc. # 25-1 at 9.)

The advertisement netted several applicants.   (Doc. # 25-4 at 6.)   Over several months, Honshin Song, Sewon's CEO and sole hire-fire authority (Doc. # 25-4 at 1), interviewed the best applicants for the position. (Doc. # 25-4 at 6.)   The interviews were conducted entirely in Korean as Korean proficiency was necessary for the role.   (Doc. # 25-4 at 6.)   Ultimately, Song hired an applicant who had interviewed well, had a college degree, and who was bilingual with both English and Korean language proficiency.   (Doc. # 25-4 at 6.)   The new hire presented as ethnically Korean and started at Sewon in February of 2020.

Joyce saw the new hire shortly after he arrived.   Upon seeing that a Korean person had gotten a better-paying job at Sewon, Joyce orally complained to his direct

---

[1]  To the extent that Joyce alleges he inquired about the job opening, such an allegation is unsupported by the record. Joyce testified that he told Sunny Oh, his supervisor, that he was interested in Terry Kim's position.   (Doc. # 25-1 at 8.)   But Terry Kim never left Sewon; rather, Kim was working for Sewon from Korea for several months.   (Doc. # 25-4 at 5.)   The job opening that resulted in the new hire that Joyce ultimately complained about was unrelated to Kim's position and only opened months after Kim went to Korea.   (Doc. # 25-4 at 5.)   And for that job opening, Joyce testified that he was "never [] aware of the job in general" before the new hire came on board, and that he never asked about the job's requirements, how to apply, or if he could apply.   (Doc. # 25-1 at 9.)

supervisor, Sunny Oh (Oh).   (Doc. # 17 at 4.)   The existence of that complaint is disputed.   Joyce alleges that he complained to Oh that Sewon hired a person of Korean descent instead of promoting him because Joyce is Black.   (Doc. # 17 at 4.) Oh contends that Joyce never complained to him about the new hire, let alone that Joyce believed he was not promoted because of his race. (Doc. # 25-5 at 2.) However, upon learning about the new hire, Joyce never asked Oh what the office-job requirements were, what the day-to-day of the job entailed, or how he could apply for similar positions.   (Doc. # 25-1 at 9.)   Rather, Joyce just complained that he was not promoted for the position because of his race.   (Doc. # 17 at 4.)

In any event, Oh (who, again, contends that the complaint never happened) testified that he did not tell his boss, Song, about Joyce's alleged complaint. (Doc. # 25-5 at 2.)   Further, Song testified that he had no idea about Joyce's complaint regarding the failure-to-promote Joyce to an office position. (Doc. # 25-4 at 8.)

Nonetheless, Song terminated Joyce days after Joyce's alleged complaint to Oh.   (Doc. # 25-4 at 8.)   Song testified that he terminated Joyce based on his own observation of Joyce's performance and based on two supervisors' verbal reports about Joyce's on-the-job misconduct: Oh's report and Minjung Hwang's (Hwang) report.   (Doc. # 25-4 at 7–8.)   Song testified that he terminated Joyce because he was unprofessional, untruthful, and unreliable as he routinely would be absent or

tardy, and took too many lunch breaks, and ate lunch while handling company material, amongst other allegations of misconduct brought to Song by Oh and Hwang, as well as by other employees.   (Doc. # 25-4 at 7–8.)

Thereafter, Joyce filed this action under 42 U.S.C. § 1981, alleging race discrimination and retaliation.

## IV.   DISCUSSION

### A.   42 U.S.C. § 1981 Failure to Promote Claim

Joyce abandoned his failure-to-promote claim in his responsive briefing to Sewon's motion for summary judgment. "In the interest of judicial economy, Plaintiff abandons his failure-to-promote claim." (Doc. # 26 at 13.)   Accordingly, summary judgment is due to be granted in Sewon's favor as to this claim.   The court now turns to Joyce's sole remaining claim: retaliation under 42 U.S.C. § 1981.

### B.   42 U.S.C. § 1981 Retaliation Claim

Joyce alleges that Sewon violated 42 U.S.C. § 1981's anti-discrimination provisions when it terminated him.[2]   Specifically, Joyce contends that Sewon retaliatorily terminated him because Joyce complained that he had been overlooked for a promotion because he "was Black." (Doc. 25 at 13–14.)

---

[2]   Because retaliation claims employ the same legal framework under Title VII and § 1981, the court will occasionally cite cases brought under Title VII.   *See Jefferson v. Sewon Am., Inc.,* 891 F.3d 911, 919 (11th Cir. 2018) ("We examine claims of [] retaliation under the same legal framework regardless of whether the plaintiff invokes section 1981 or section 2000e.").

To establish a *prima facie* case for retaliation, Joyce must show (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action; and (3) that the adverse action was causally related to the protected activity. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).   It goes without saying that termination is a classic adverse action.   *Id.* at 976.   Sewon contends, however, that Joyce has failed to raise a genuine dispute as to the first and third elements of a retaliation claim—protected activity and causation.   Sewon is right on both accounts.

### 1.  Joyce Did Not Engage in Statutorily Protected Activity

Sewon first argues that Joyce's complaint to Oh about being overlooked for a promotion because he is Black did not constitute "statutorily protected activity" as required for a retaliation claim.   *See Crawford*, 529 F.3d at 976.   Joyce rightly points out that oral complaints of race discrimination can constitute protected activity.   *See Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).   But for a complaint to constitute protected activity, it must be brought on a "good faith, reasonable belief" that the subject of the complaint constituted unlawful discrimination.   *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).   It is here that the dispute between the parties lies.

Joyce contends he had a good faith, reasonable belief to complain because "it

8

was not right to hire a Korean with no experience" instead of a "Black American" with experience at Sewon.    (Doc. # 17 at 4.)    Sewon contends that Joyce did not lodge a reasonable failure-to-promote complaint because Joyce did not inquire into what the job qualifications and requirements were, he did not inquire into what the job's description was, he did not ask to apply for the job, and he did not apply for the job.    Sewon is right; Joyce's complaint was unreasonable.

To show that he complained with a "good faith, reasonable belief," Joyce must show (1) that he subjectively believed that Sewon engaged in unlawful discrimination and (2) that his subjective belief was objectively reasonable in light of the facts and law.    *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (citing *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).    Even if Joyce subjectively believed that Sewon discriminated against him when it failed to promote him to the office position, his belief could not have been objectively reasonable.

Joyce need not prove that Sewon's conduct was actually discriminatory, *id.*, nor does he need to "consult a lawyer for expert analysis of his complaint." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 925 (11th Cir. 2018).    He need only "reasonably" believe that the alleged discrimination existed.    *Id.* (quoting *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999)).    And the reasonableness of his belief "must be measured against existing substantive law."    *Howard*, 605 F.3d at 1244

9

(citing *Clover*, 176 F.3d at 1351).   Here, Joyce complained about a discriminatory failure to promote.   The substantive law of a failure-to-promote claim based on circumstantial evidence requires,[3] in relevant part, Joyce to show (1) that he was qualified for and applied for the position the employer was seeking to fill and (2) that despite his qualifications, he was rejected.   *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).[4]   Joyce fails to establish these two elements, and a reasonable employee in Joyce's shoes—even without knowing a lick of caselaw—knows that an employer did not unlawfully deny him a job opportunity that the employee never applied for, let alone inquired about.

The evidence, even when viewed in the light most favorable to Joyce, shows that Joyce was not qualified for the job, that he did not apply for the job, and that he did not ask what the application requirements were or what the job itself entailed.

---

[3]   Joyce contends that he did not have to reasonably believe that he was qualified for the position or that he needed to attempt to apply for the position to lodge a good-faith reasonable complaint about Sewon's allegedly discriminatory failure to promote him.   In support, Joyce cites *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 925 (11th Cir. 2018).   But *Jefferson* provides no such support.   *Jefferson* found a complaint to be reasonable where there was direct evidence of unlawful hiring practices.   Here, there is no such direct evidence, meaning that Joyce must rely on the circumstantial evidence framework to establish that his complaint was objectively reasonable.   *See Howard*, 605 F.3d at 1244 (explaining that the reasonability of a complaint is measured on the substantive law that is the subject of the complaint) (citing *Clover*, 176 F.3d at 1351).

[4]   To make a complete prima facie case for a failure to promote claim based on circumstantial evidence, a plaintiff must show that (i) "he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class."   *Vessels*, 408 F.3d at 768.

In fact, Joyce was not "aware" of the job "in general" until the new hire came on board.   (Doc. # 25-1 at 9.)   When he saw the new hire, Joyce did not then ask what the new-hire's position entailed, what the application requirements were, or how to apply for similar positions.   Rather, at the time of his complaint, Joyce saw that a person of a different race was hired, assumed he was unlawfully denied a promotion on the basis of race, and complained to Oh.   That assumption is not reasonable.

Objectively reasonable failure-to-promote complaints require the complaining employee to at least *attempt* (1) to understand what the job entails and what its application requirements are, (2) to ascertain whether he may be qualified for that type of job, and (3) to apply for that job unless the plaintiff justifiably believed that the employer's discriminatory practices made such an application a futile gesture.   *See Vessels*, 408 F.3d at 768; *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1274 (11th Cir. 2002).   Joyce did none of these things. Further, Joyce cannot argue that he believed applying was futile due to Sewon's discriminatory practices because Joyce does not present any evidence that he believed Sewon had any discriminatory practices until he learned that someone else had been hired for the job.   *Cf. Joe's Stone Crabs, Inc.,* 296 F.3d at 1274 (finding that non-applicants had a justifiable belief that applying would be futile where the non-applicants were told the company did not hire women).   Accordingly, Joyce's complaint to Oh about being overlooked for a job because of his race was objectively

11

unreasonable and therefore cannot constitute "statutorily protected activity" as required for a retaliation claim under 42 U.S.C. § 1981.   *See Crawford*, 529 F.3d at 970.

Two final points.   At bottom, Joyce has two gripes about his treatment at Sewon that purportedly made his complaint objectively reasonable.   The first is that Joyce was never directly informed by Sewon about the office position posting.   But Sewon was not obligated to inform employees about a new job posting, let alone obligated to inform employees about a new job posting whom Sewon knew did not meet the job's legitimate requirements.   In short, Sewon's failure to preemptively place a job application in Joyce's unqualified hands does not make Joyce's complaint more reasonable.

Joyce's second gripe is that Sewon offers jobs that require Korean-language proficiency, which, according to Joyce, made his failure-to-promote complaint reasonable.   Put differently, Joyce alleges that legitimate language-proficiency requirements for a job, standing alone, are *prima facie* discriminatory.   (Doc. #26 at 3) ("Without apology, [Sewon] admits that [it] is not an equal opportunity employer. Defendant engaged in a discriminatory hiring process; wherein it published a single advertisement for an open salaried position *solely in the Korean language* and placed on a single *Korean* language website.").)   This argument is misguided.   After all, language-proficiency is a neutral, non-discriminatory qualifier

for jobs that legitimately need that specific lingual proficiency—as it was indisputably needed here.   *See Church v. Kare Distribution, Inc.*, 211 F. App'x 278, 280 (5th Cir. 2006) (upholding a bilingual employment requirement that was based on a legitimate "business need").   It goes without saying, however, that language requirements can be a proxy or "covert basis" for race discrimination *if* there is evidence establishing discriminatory intent or disparate impact.[5]   *Id.*; *see also Davis v. Infinity Ins. Co.*, 2022 WL 1152612, at *3-4 (11th Cir. Apr. 19, 2022) (indicating that bilingual hire-fire requirements could constitute disparate impact discrimination).   But contrary to Joyce's arguments, language itself is not a protected trait under 42 U.S.C. § 1981, and legitimately necessary language requirements by themselves do not create a *prima facie* case of discrimination.

In any event, Joyce only learned about the Korean-language proficiency requirement *after* he complained. Joyce did not know about the language requirement when he complained because he did not ask or attempt to apply for the position.   (Doc. #25-1 at 8–9).   Accordingly, Joyce's *post-hoc* knowledge of the Korean-language requirement does not weigh on whether Joyce had a good-faith, reasonable belief that Sewon was discriminating against him at the time of his

---

[5]   For example, other evidence establishing discrimination would be if the plaintiff used comparators to show that a bilingual requirement was being applied discriminately; or if the plaintiff established that being bilingual was not actually necessary for the job and was therefore a pretext for discriminatory decisions; or if the plaintiff used statistics to show that the bilingual requirement disparately impacted protected classes.

complaint. *See Clover*, 176 F.3d at 1352 (reiterating that the reasonability of a plaintiff's complaint about unlawful practices is determined by the facts known to the plaintiff at the time of the complaint).   Nonetheless, as discussed, even if Joyce knew about the Korean-language requirement before complaining to Oh, that knowledge would not have made Joyce's failure-to-promote complaint objectively reasonable; in fact, it would have put Joyce on notice that he was unqualified for the position and could not reasonably complain unless he had a reason to believe the language policy was pretextual or applied differently to protected classes, which he did not.

In sum, Joyce's complaint about unlawful discrimination was objectively unreasonable because he never attempted to ascertain whether he was qualified for the position, because he never asked to apply for the position, and because he did not apply for the position even though doing so would not have been futile.   *See Vessels*, 408 F.3d at 768 (outlining the substantive law of a failure-to-promote claim); *see also Joe's Stone Crabs, Inc.*, 296 F.3d at 1274.   Therefore, Joyce's complaint did not constitute statutorily protected activity as required for a retaliation claim under 42 U.S.C. § 1981.   Summary judgment is due in Sewon's favor on this basis.

## 2.  Joyce Has Not Established Causation

Alternatively, even if Joyce's complaint was statutorily protected activity, Joyce's retaliation claim nonetheless fails because he has not presented sufficient evidence for a juror to conclude that his termination was because of his complaint about an unlawful failure-to-promote.   Sewon argues that Joyce cannot establish causation because (1) Song, the decisionmaker, was unaware of Joyce's complaint, and because (2) Joyce cannot show that Song was a cat's paw for Oh's discriminatory animus.   Both points carry the day.

Like in most retaliation contexts, to establish causation under 42 U.S.C. § 1981 a plaintiff must present sufficient evidence to show that his protected activity was a but-for cause of the alleged adverse action by the employer. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).   Typically, when relying on circumstantial evidence of discriminatory animus, like here, the "but-for" burden of causation "can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."   *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).   However, this rule comes with a threshold requirement: The plaintiff must first establish that "the decisionmaker was aware of [the] protected conduct at the time of the adverse employment action."   *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Here, it is undisputed that the person who made the decision to terminate Joyce was Sewon's CEO, Honshin Song.   Further, it is unrebutted that Song was not aware of Joyce's protected activity, *i.e.*, Joyce's complaint to Oh. (Doc. # 26 at 21); *Smith v. City of Greensboro*, 647 F. App'x 976, 983 (11th Cir. 2016) (holding that "unrebutted" denial of awareness defeats causation arguments based solely on proximity).   Accordingly, lacking the requisite decisionmaker awareness, Joyce is unable to show but-for causation under the traditional circumstantial evidence framework.

Nonetheless, Joyce's claim could potentially be saved under another causation theory.   Joyce argues that he has established causation under the cat's paw theory. Joyce asserts that Song, the decisionmaker, was a mere conduit, or cat's paw, for Oh's discriminatory animus.   The cat's paw theory concerns "conditions under which a lower-level employee's animus can be imputed to a decisionmaker." *Ziyadat v. Diamondrock Hospitality Co.*, 3 F.4th 1291, 1298 (11th Cir. 2021). Pursuant to a cat's paw theory, a defendant may be held liable for the racial animus of its non-decisionmaking employee when "that employee's discriminatory conduct causes a decisionmaking employee to" take the adverse action against the plaintiff. *Id.*   In other words, Joyce must show that Oh's discriminatory animus was the but-

16

for cause of Song's decision to terminate Joyce.    Joyce is unable to do so.[6]   *See id*.

First, Oh did not *recommend* that Joyce be fired; rather, Oh *reported* Joyce's misconduct.    Viable cat's paw cases typically involve a subordinate employee recommending that an adverse action be taken against an individual, and the decisionmaker following "the biased recommendation without independently investigating the complaint against the employee."    *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999).    And by following that biased, and unverified recommendation, the decisionmaker becomes a "mere conduit" or "cat's paw" for the recommender's discriminatory animus.    *Id.*    But here, where Oh never recommended a course of action and rather sent complaints of misconduct up the chain of command, there is less reason to believe that Joyce would not have been terminated "but-for" Oh's discriminatory animus.    *Id.* (finding that a cat's paw theory is weakened where there is "no recommendation to [the decisionmaker] about the course of action to take" against the plaintiff); *see also Brooks v. Hyundai Motor Mfg. Ala., LLC*, 2010 WL 3614168, at *10 (M.D. Ala. Sept. 8, 2010) (Watkins, J.), *aff'd sub nom.*, 444 F. App'x 385 (11th Cir. 2011) (finding that no subordinate

---

[6]    Most cat's paw theory cases deal with instances where there is direct evidence that the non-decisionmaker employee had a discriminatory animus.    However, circumstantial evidence can also establish a non-decisionmaker's discriminatory animus.    And here, because Oh reported Joyce's misconduct days after Joyce complained to him, temporal proximity establishes that there is a genuine dispute of fact as to whether Oh acted with discriminatory animus.    *See Thomas*, 506 F.3d at 1364.    The following cat's paw analysis presumes that the factfinder has made the threshold determination that Oh himself acted with discriminatory animus.

recommendation weighs against a determination that the decisionmaker was a cat's paw for discrimination).

Second, Song relied on many reports of misconduct when he decided to fire Joyce.   Of course, Oh reported Joyce's misconduct.   But so did Minjung Hwang, another Sewon manager.   And there is nothing in the record to establish that Hwang acted with discriminatory animus when she reported Joyce's misconduct, nor is there evidence suggesting that Song gave greater weight to Oh's report.   Rather, the evidence suggests that Hwang's independent report of misconduct played a larger role in Song's decision because Hwang reported the misconduct that was the "final-straw" leading to Joyce's termination.   (Doc. # 25-2 at 14.)   *See Martinez v. Gulf Coast Orthopedic Ctr. Corp.,* No. 8:17-CV-77-T-AEP, 2019 WL 3577214, at *12 (M.D. Fla. Aug. 6, 2019) (holding that cat's paw liability was unavailable where the decisionmaker relied on statements from two employees—one of whom did not have discriminatory animus).   Additionally, Song himself observed Joyce's misconduct, and Song also received complaints about Joyce from other employees, which further precludes a finding that Song was a "mere conduit for any discriminatory animus harbored" by Oh.   *Id.*; (Doc. # 25-2 at 16.)

Third, and finally, Joyce has not pointed to any evidence challenging the veracity of much of the alleged underlying misconduct that Oh (or Hwang) reported. In fact, Joyce admits that he "had a history of less than stellar attendance" at Sewon.

(Doc. # 26 at 26.)       *See Stimpson*, 186 F.3d at 1332 (holding that the "discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, [must be] an actual cause of the other party's decision to terminate the employee" to establish a cat's paw claim); *see also Brooks*, 2010 WL 3614168 at *10 (finding that cat's paw liability did not apply where there was no evidence that the reported misconduct was untrue).

All said, Joyce fails to establish that Oh's report to Song was a but-for cause of Song's decision to terminate Joyce.   Therefore, a reasonable jury could not conclude that Song was a "cat's paw" for Oh's discriminatory animus. Consequently, Joyce has failed to establish genuine disputes of material fact as to causation and therefore has failed to establish his 42 U.S.C. § 1981 retaliation claim. Sewon's motion for summary judgment is due to be granted.

## V.   CONCLUSION

Accordingly, it is ORDERED that Sewon, C&A, Inc.'s motion for summary judgment (Doc. # 23) is GRANTED.   A final judgment will be entered separately.

DONE this 11th day of October, 2022.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE